## REPUBLIC STEEL CORP v SONTAG

Ohio Appeals, 7th Dist, Mahoning Co

Decided Oct 25, 1935

Harrington, Huxley & Smith, Youngstown, for plaintiff in error.

Sidney Rigelhaupt, Youngstown, for defendant in error.

## OPINION

By CARTER, J.

The record discloses that J. H. Kiefer was a duly commissioned deputy sheriff, appointed by the sheriff of Mahoning County under the provisions of §2830 GC. The rule appears to be settled in this state that a company, such as the one in question, is not liable for the wrongful acts of a police officer while acting by virtue of his office, unless such wrongful acts occurred in the performance of an act which was outside of the police duties of a policeman and which were authorized or ratified by such company, and in the case of the **New York, Chicago & St. Louis Railway Company v Fieback, 87 Oh St, 254,** the syllabi reads as follows:

"1. A policeman who is appointed and commissioned by the Governor, under §§3427 and 3428, Revised Statutes, §§9150 **and 9151, GC,** although his appointment was upon the application of a railroad company, and his salary is paid by such company, if a public officer, deriving his authority directly from the state, and his acts will be presumed to have been performed in his capacity as such officer until such presumption is overcome by sufficient evidence.

2. A railroad company is not liable for the wrongful acts of such officer while acting by virtue of his office, unless such wrongful acts occurred in the performance of an act which was outside of the public duties of a policeman and which were authorized or ratified by such company."

On page 264 the court said:

"Police officers, by whomsoever appointed or elected, are generally regarded as police or state officers, deriving their authority from the sovereignty for the purpose of enforcing the observance of the law."

A duly deputized sheriff, we hold, is a public officer. An examination of the rec-

ord discloses that Kiefer, the officer in question exercised no official functions, outside of the plant property and was under Lt. Jardine. Mr. Jardine testified that at the time of the assault he held the position of police lieutenant in the plant. The record also discloses that Kiefer was paid entirely by the company.

In the case of **Pennsylvania Railroad Company v Deal, 116 Oh St, 415,** the court cite a number of authorities dealing with the liability of private corporations for false arrest or imprisonment by agents or servants appointed by public authority, and quote with approval the following:

"In every instance, therefore, the liability of the defendant is a question of fact to be determined by the jury under appropriate instructions."

The plaintiff testified that he resided at the time of the assault on Cherry Street, Youngstown; that about nine o'clock in the evening of May 15th, 1933, he left home and started for Warren to try to get a job and was going to board a freight train. He claims he went down by the Center bridge, about a quarter of a mile east of the bridge, and was standing on the Pennsylvania tracks, waiting for a freight. He testified that the Republic Steel Corporation property was south of the tracks, that he had waited there about half an hour; that while standing there he heard some kind of noise at or near the Republic plant, he looked around and saw a man running from the Republic yard towards him and ran within about two feet of him; that another man was chasing him, and that the man doing the chasing started to shoot, that when he heard the shot he started to run north on the tracks, there being a number of tracks; that when he started to run, this man who did the shooting ran after him; that he ran about a block and a half, and while he was running the man running after him did some shooting; that he, the plaintiff, tripped, fell over a switch and crawled under a car; that the man chasing him came around in front of him and grabbed him by the shoulders, pulled him out and started to beat him over the head with his club, and other assaults took place at the time. He claims that he then took him over to the Republic yard and showed him a coil of wire and said "Did you fix this through the day time to take out tonight," and that he told him that he was not there at all; that this officer turned him over to another man, who took him to a shanty

in which there were two uniformed men and a person dressed in civilian clothes, and one of these men said to him, "what do you mean by coming into our yard and steal our copper wire"; that he replied, "I was not in your yard at all," and he further testified that Kiefer was the officer who beat him.

Now, this is the testimony of the plaintiff. The arresting officer, Kiefer, testified that he was employed by the Republic in May, 1933, when the assault occurred, as police officer and paid by the company. He says that he patrolled the plant of the Republic Steel Company, and was then requested by counsel for defendant to state what occurred on that night as he was patrolling the plant, and he stated, "I was coming from the coke works plant over the bridge, headed toward No. 5 blast furnace, and to my right I noticed a man, a shadow, you could see something moving around there, I couldn't exactly see what it was, and I took it east to get close to the subject and I saw a man stooping over. He had some copper wire," and that he started towards this man; that it was in the night time, around nine or ten o'clock; and that he approached this man quietly, and he testified somebody hollered, "I don't know what fellow hollered but Sontag ran out from the side of the saw-shed and kicked me in the leg," and he says this happened near the saw-shed right at the end of the saw-shed: that he had a flash light in his hand; that Sontag had hold of him and that he hit him with the flash light a couple of times and that the other fellow ran away; that "in the scuffle both of them fell to the ground and finally he, the officer, got him up and stood him upon his feet and pulled his revolver out, tried to get this other fellow to stop, shot two times in the air, but he kept on going."

On cross examination Mr. Kiefer testified that he first started to work for the Republic Steel Corporation in 1932, about a year before the occurrence, and that his work all the time was of the same character as he was doing on this particular night; that Lieutenant Jardine was his immediate superior; that a Mr. Williams, who supervised all of the work of patrolling the plant, was the chief of police and superintendent of police of the plant; that the work consisted of walking through the plant over a given beat; that there were other men working in the same capacity at the plant; that he was paid by the Republic Steel Corporation.

This question was propounded:

"Q. This night this thing happened, you had gone down to this section of the plant where this assault occurred at the instance and instruction of Jardine, your superior?

A. Mr. Jardine and I—Lieutenant, rather —both of us were up there the previous Sunday when things were missing, and we talked it over at lunch and I said 'I think I will take another trip up there to see if anybody come in. Maybe this fellow will come back in after this material'."

So that the lieutenant knew of his intention to go to this particular place to look after this property for the Republic Steel Corporation. These questions were propounded to the officer, Kiefer:

"Q. You performed your duties solely on behalf of the Republic Steel Corporation, did you not? You were employed in your work there that night solely for them, solely in behalf of protecting their property?

A. Yes sir.

Q. You weren's a public officer of any kind other than a private policeman down there, working for the plant?

A. I was a police officer in the plant.

Q. You weren't patrolling that property —let me ask you this way—on the instructions of the sheriff of Mahoning County, were you?

A. It was under my lieutenant, that is all I know.

Q. Yes. You weren't instructed by the sheriff, Englehart, of Mahoning County, to go down there and protect any particular property of the Republic Steel Corporation on behalf of the sheriff, were you?

A. No, just through my lieutenant. That is all I know of.

Q. During all the time you were engaged for the Republic, and during that time when you held a commission as deputy sheriff, did you at any time make any arrests or exercise any official functions outside of that plant?

A. No sir.

Q. Were you called upon at any time by Mr. Englehart to exercise any functions of a deputy sheriff?

A. No, I wasn't."

From the testimony in this record we are satisfied that Mr. Kiefer was employed by the company to protect its property, and not for the express purpose of enforcement of the criminal statutes of the state. At least a jury question was presented.

In the case of Charles J. McKain v Baltimore & Ohio Railroad Company, 23 L.R. A., N.S., page 289, the court held:

"1. A special officer appointed and commissioned by the governor at the instance of a railroad company, under the provisions of paragraph 31, chapter 145 Code of 1899, (Code 1906, paragraph 4281), and paid by such company for his services, is prima facie a public officer, for whose wrongful acts such company is not liable.

2. If such an officer is engaged in special service for the company, such as guarding its property or enforcing obedience to its rules and regulations, and does a wrongful act for which the injured party is entitled to damages, and such act was within the scope of such service or employment, the company is liable as in the case of its regular employes, such as conductors and station masters.

3. But the company is not liable for a false arrest, assault and battery, and malicious prosecution, not directed or instigated by it, and founded upon an alleged breach of the peace at one of its stations, in no way affecting or involving, so far as the evidence discloses, any of its property, rights or servants, nor growing out of any transaction between the plaintiff and the company, although the plaintiff was rightfully in the station, having a ticket and awaiting the arrival of a train, and the alleged breach of the peace, arrest and assault and battery, occurred on the premises of the company."

This is a lengthy opinion. Innumerable cases are cited, both pro and con, bearing on the question of liability and non-liability of the company for acts of deputy sheriffs and special policemen, duly appointed, and the court reviews many authorities, and after reviewing these authorities the court say:

"The import of these decisions is that such appointees, although paid for all their services by the persons at whose instances they are appointed, are not servants of such persons in respect to all the acts they perform by virtue of their offices; but only in respect to services rendered the company, such as defending or preserving its property. The line of distinction, sometimes hard to recognize under the circumstances of the particular case, marks the point at which the act ceases to be one of service to the employer, and becomes one of vindication of public right or justice, the apprehension or punishment of a wrongdoer, not for the injury done to the employer, but to the public at large. Perhaps the clearest and best statement of it is that given by the eminent English Jur-

ist Blackburn, in Allen v London & S. W. R. Co., L R. 6 Q.B., 65, as frequently quoted by the American courts: 'There is a marked distinction between an act done for the purpose of protecting the property by preventing a felony, or of recovering it back, and an act done for the purpose of punishing the offender for that which has already been done. There is no implied authority in a person having the custody of property to take such steps as he thinks fit to punish a person who, he supposes, has done something with reference to the property which he has not done. The act of punishing the offender is not anything done with reference to the property; it is done merely for the purpose of vindicating justice'."

We cite also Fletcher on Corporations, Vol. 5, Par. 3352.

Now, the presumption is that an act done by a duly appointed officer is done as a public officer. This is, however, a presumption only, which may be rebutted or overcome by evidence to the contrary. Kiefer was placed in charge by the company to care for its property, and the officer's own testimony is to the effect that the assault occurred by reason of the attempt on the part of the officer to prevent the taking of the property of the company. The primary interest of the company was the protection of its property.

Now, Kiefer was a public officer and authorized so to act. The presumption was that Kiefer was acting as a police officer. The foundation of this rule is that one who is invested with authority by the sovereign, commissioned and sworn to faithfully perform the duties pertaining to such commission must necessarily be supposed to be acting in conformity thereto, and anyone who claims that the officer was not so acting must show affirmatively that such was the case. Has this presumption in this case been overcome so that its effect is destroyed as a presumption? This court can not say as a matter of law, in the light of the testimony, that the officer at the time was acting in the capacity of a public official. The testimony raised questions of fact for the jury to determine under proper instructions, as to whether Kiefer was at the time of the assault acting as a public officer or otherwise, and this question was squarely placed before the jury in the special request that was given by defendants below before argument, wherein the court said:

"The court says to you as a matter of law that there is a clear presumption in law that the acts of a deputy sheriff in making an arrest of one in the act of committing an offense are made in his official cacapity as a public officer and if you find by the greater weight of all the evidence in this case that Officer Kiefer was a deputy sheriff, duly commissioned at the time of making the arrest of the plaintiff in this case on May 14, 1933, and at said time was acting solely in the capacity as such deputy sheriff, and further find from the greater weight of all the evidence that the plaintiff, Mr. Sontag, at said time was in the act of stealing property of the Republic Steel Corporation, then and in that event, plaintiff cannot recover in this case and your verdict must be in favor of the defendant, Republic Steel Corporation."

In his general charge after argument the court further charged on this proposition as follows:

"* * * If you find that Kiefer, in the consummation of any acts which he did was acting in his capacity alone as a deputy sheriff and a public officer, then the defendant is not liable for any acts which he did; * * * if, upon the other hand, you find by the greater weight of the evidence that Kiefer, in the doing of any act, was acting jointly as an employe of the defendant company and in his capacity as a deputy sheriff and public officer you come to a consideration of the next issue in the case * * * whether an assault was committed * * *.

* * * It is the law that a police officer, such as Kiefer, although his appointment was upon the application of the defendant and his salary was paid by the defendant, nevertheless he is a public officer, deriving his authority directly from the State, under the laws which the state has enacted and his acts, whatever they are, will be presumed to have been performed in his capacity as such officer until such presumption is overcome by evidence, and Kiefer, in the doing of any acts by him is presumed to have acted as a public officer until that presumption is overcome by sufficient evidence; that is, a preponderance of the evidence."

We therefore conclude that the court did not err in refusing to direct a verdict in this case. On the question of the weight of the evidence, we have examined the record with this in view and there was considerable testimony unfavorable to plaintiff, particularly with reference to his purposes down at or near the plant on the night in question. However, the jury heard

this testimony and apparently believed the plaintiff. We are not inclined to reverse this case on that ground.

Now, it is claimed that prejudicial error intervened in the closing argument of counsel for plaintiff below. We have examined the record with this complaint in view, and the various remarks made by counsel for plaintiff in his closing argument; that is, such as appear from the record, and the record is silent as to what action the court took, if any, as to any objection made except in one instance, wherein there was a dispute as to what the evidence was in the case. In fact, the record does not disclose that there was any objection made by the defendant below to this line of argument. There were some strong remarks made by counsel for the plaintiff in his closing argument of which we do not approve, but it is difficult to define the line of demarcation between proper and improper argument. However, in the light of the record as presented, which only shows a part of the argument of the plaintiff, and none of the argument of the defendant, we can not say that there was such prejudicial error that would warrant the court in reversing this case on that ground, and we cite counsel to the case of **Warder, Bushnell & Glessner Co. v Jacobs, 58 Oh St, 77.** The first paragraph of the syllabi is as follows:

"It is an established rule of reviewing courts that the error for which a judgment may be reversed must affirmatively appear on the face of the record.

Where a record shows that improper remarks were made in his argument to the jury by the attorney of the prevailing party, but does not show whether the court reproved the attorney or directed the jury to disregard the remarks; nor is the evidence presented to the court for review, in such case, a reviewing court is not warranted in reversing the judgment entered upon the verdict, however improper the remarks may have been. The presumption in such case is that the court performed its duty and that the evidence sustained the verdict."

As before suggested, no objection was made, and the court made no ruling thereon, and of course no exceptions were noted.

Judgment of the lower court is affirmed.

ROBERTS and NICHOLS JJ, concur.