JOURNAL ENTRY AND OPINION.
{¶ 1} On January 2, 2003, Litrell Chapman applied to reopen this court's judgment in State v. Chapman (Oct. 17, 2002), Cuyahoga App. No. 73609, pursuant to App.R. 26(B) and State v. Murnahan (1992),63 Ohio St.3d 60, 584 N.E.2d 1204. In State v. Chapman, this court affirmed Chapman's convictions for aggravated murder and aggravated robbery. In his application to reopen, Chapman alleges his appellate counsel was ineffective for not arguing certain issues. On May 19, 2003, Chapman moved to supplement his application with an argument on conflict of interests and the affidavit required by App.R. 26(B)(2)(d); we grant his motion to supplement. Additionally, we deny his application to reopen.
 {¶ 2} In order to establish a claim of ineffective assistance of appellate counsel, the applicant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense. Strickland v. Washington (1984), 466 U.S. 668,80 L.Ed.2d 674, 104 S.Ct. 2052; State v. Bradley (1989), 42 Ohio St.3d 136,538 N.E.2d 373, cert. denied (1990), 497 U.S. 1011, 110 S.Ct. 3258.
 {¶ 3} In Strickland, the United States Supreme Court ruled judicial scrutiny of an attorney's work must be highly deferential. The Court noted it is all too tempting for a defendant to second-guess his lawyer after conviction and it would be all too easy for a court, examining an unsuccessful defense in hindsight, to conclude that a particular act or omission was deficient. Therefore, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.'" Strickland,104 S.Ct. at 2065.
 {¶ 4} Specifically, in an ineffective assistance of appellate counsel argument, the United States Supreme Court has upheld the appellate advocate's prerogative to decide strategy and tactics by selecting what he thinks are the most promising arguments out of all possible contentions. The court noted: "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." Jones v. Barnes (1983), 463 U.S. 745,77 L.Ed.2d 987, 103 S.Ct. 3308, 3313. Indeed, including weaker arguments might lessen the impact of the stronger ones. Accordingly, the Court ruled judges should not second-guess reasonable professional judgments and impose on appellate counsel the duty to raise every "colorable" issue. Such rules would disserve the goal of vigorous and effective advocacy. The Supreme Court of Ohio reaffirmed these principles in Statev. Allen, 77 Ohio St.3d 172, 1996-Ohio-366, 672 N.E.2d 638.
 {¶ 5} Moreover, even if a petitioner establishes an error by his lawyer was professionally unreasonable under all the circumstances of the case, the petitioner must further establish prejudice; but for the unreasonable error, there is a reasonable probability that the results of the proceeding would have been different. A court need not determine whether counsel's performance was deficient before examining prejudice suffered by the defendant as a result of alleged deficiencies.
 {¶ 6} Furthermore, appellate review is strictly limited to the record. The Warder, Bushnell Glessner Co. v. Jacobs (1898),58 Ohio St. 77, 50 N.E. 97; Carran v. Soline Co. (1928), 7 Ohio Law Abs. 5 and Republic Steel Corp. v. Sontag (1935), 21 Ohio Law Abs. 358. "Clearly, declining to raise claims without record support cannot constitute ineffective assistance of appellate counsel." State v. Burke,97 Ohio St.3d 55, 2002-Ohio-5310, paragraph 10.
 {¶ 7} Chapman claims his appellate counsel should have argued he was denied his right to a speedy trial. R.C. 2945.71(C) provides that a person against whom a felony charge is pending must be brought to trial within 270 days after the person's arrest. Furthermore, subsection (E) provides that for "purposes of computing time * * * each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days."
 {¶ 8} However, the courts have interpreted the language of subsection (E) to mean that the triple-count provision applies only if the accused is being held without bail solely on the pending charge. If the accused is being held for more than one charge, then the triple-count provisions do not apply, and the state has the full 270 days to bring the accused to trial on the subject charge. State v. Thieshen (1977),55 Ohio App.2d 99, 379 N.E.2d 622 and State v. Brelo Cuyahoga App. No. 79580, 2001-Ohio-4245. Also under R.C. 2945.72(E), the time within which the accused must be brought to trial is extended by any period of delay necessitated by reason of a motion, proceeding, or action by the accused. Moreover, if the accused is found guilty of another charge while awaiting trial on the subject charge, R.C. 2945.71 ceases to apply, and the time within which the accused must be brought to trial is governed by R.C. 2941.401. State v. Kuhn (June 10, 1998), Ross App. No. 97 CA 2307;State v. Fox (Oct. 22, 1992), Cuyahoga App. No. 63100 and State v. Himes
(Dec. 12, 1988), Clermont App. No. CA88-01-007. Under R.C. 2941.401, the accused must petition the state to bring him to trial through a specific procedure in order to invoke the statutory deadlines.
 {¶ 9} In the present case, Chapman was arrested on November 22, 1996, on the subject charge and was brought to trial on October 29, 1997, a total of 342 days. However, from November 22, 1996, he was also being held on another murder charge in State v. Chapman, Cuyahoga County Common Pleas Court Case No. CR-345622, and on April 11, 1997, a jury found him guilty and the judge sentenced him on that day. Chapman does not allege he invoked R.C. 2941.401 thereafter, and there is no evidence in the record that he did so. Therefore, the speedy trial provisions of R.C. 2945.71 ceased to apply well before the 270 days expired, and R.C.2941.401 did not come into play because Chapman never invoked it. Accordingly, his speedy trial argument is not well founded, and appellate counsel was not deficient for failing to argue it.
 {¶ 10} Chapman also argues he was denied his right to be present at all proceedings; specifically, he complains he was in a holding cell during the pretrial conferences and could not and did not consent to any extensions of time, which would toll the time for his speedy trial rights. Thus, any extensions of time at defendant's request should not be considered as extending the time for complying with R.C. 2945.71. Because Chapman groups this argument with his speedy trial argument, it is apparent that he is trying to use this argument as a basis for his speedy trial argument. During the pretrial proceedings, Chapman filed several motions, and many continuances were granted at defendant's request, which otherwise would have brought the total days down to within the 270 days allowed by the statute. Thus, Chapman is trying to eliminate those continuances in order to make a successful speedy trial argument. However, as explained above, because the continuances were irrelevant in determining whether his speedy trial rights were denied, appellate counsel in the exercise of professional judgment could conclude that arguing an issue which could show no prejudice was not worth raising. Additionally, Chapman cites no authority for the proposition that a pretrial hearing is such a critical stage of trial that the defendant must be present.
 {¶ 11} Chapman next argues prosecutorial misconduct in failing to disclose exculpatory evidence, i.e., that the two eyewitnesses at the time of the crime were under the influence of cocaine or alcohol and that one eyewitness seemed confused about the location of the crime and the identities of the shooter and the helper.[1] The court has reviewed the portions of the record to which Chapman cites to support this argument and concludes that it is baseless.
 {¶ 12} Chapman then complains he was denied his right to face his accusers because of the use of hearsay evidence and perjured testimony. He argues that Lehecka's confusion about the shooter, the helper, and the place of the incident demonstrates the state's knowing use of perjured and hearsay testimony. This argument is not well taken. The court has reviewed Lehecka's testimony. Appellate counsel was not deficient for not trying to classify any confusion in the testimony as hearsay or perjury. Rather, counsel used that testimony as the basis for the insufficiency of evidence and manifest weight of the evidence arguments. This court will not second-guess counsel's professional judgment in that regard. The court further notes that trial counsel did object on the basis of hearsay evidence, and the trial court sustained some of those objections, e.g., Tr. 429 and 442-443.
 {¶ 13} Chapman next claims his appellate counsel should have argued that the state denied his right to an attorney. However, the record in the present case is not well developed to make this point. Indeed, he cites to portions of the record in his other murder case, Case No. CR-345622, to support this argument. Moreover, because he had several attorneys throughout the proceedings, it is difficult to see what prejudice befell him. Thus, this court will not second-guess appellate counsel's professional judgment to reject an argument which is not well supported by the record and which has no demonstrable prejudice.
 {¶ 14} To the extent Chapman is endeavoring to argue that his failure to have immediate access to an attorney prejudiced him because he stumbled into making a statement to the police, his argument is again not well taken. Trial counsel moved to suppress the statement, and during the suppression hearing the evidence showed the following: Chapman's written statement repeated the advisement that he had the right to an attorney and the right to remain silent, and he signed the statement showing that he understood his rights and that he wished to make a statement. The judge found he knowingly, voluntarily, and intelligently gave the statement. Appellate counsel, in the exercise of professional judgment could easily conclude that an appellate court would be unlikely to overturn the trial judge's decision.
 {¶ 15} Chapman next makes a less than perfectly clear argument that his appellate counsel should have argued that the state failed to prove every element of the offense (aggravated murder) and/or the judge gave improper or plain error instructions on purpose and/or the judge did not instruct on lesser included offenses. These arguments do not establish a genuine issue that appellate counsel was ineffective. Appellate counsel did argue the sufficiency of the evidence and made every effort to marshal the record to show the inconsistencies in the testimony and the deficiencies in the witnesses.
 {¶ 16} Refocusing the argument around the issue of purpose would not have clearly made a better argument. Indeed, when a man shoots another man in the chest at close range during a robbery, it is very easy to infer the purpose to kill. This court in reviewing the sufficiency and manifest weight arguments concluded that "[w]ithout question, Paulette was the victim of an aggravated robbery and an aggravated murder." Chapman cites State v. Burchfield, 66 Ohio St.3d 261, 1993-Ohio-44,611 N.E.2d 819 and State v. Getsay, 84 Ohio St.3d 180, 1998-Ohio-533,702 N.E.2d 866, in which the Supreme Court of Ohio criticized the instruction on foreseeability. But in both cases the court ultimately upheld the instruction, because there was no objection and because the jury instruction in its entirety did not prejudice the defendant. The record in this case does not indicate that counsel objected to the instruction, and Chapman does not point to such an objection. Thus, appellate counsel could conclude in the exercise of professional judgment, that making this argument would result in the same result as inBurchfield and Getsay.
 {¶ 17} Moreover, Chapman also fails to make a persuasive argument regarding lesser included offense instructions. He does not specify which instructions should have been given. The trial court did instruct on the lesser included offense of murder. Furthermore, Chapman does not establish prejudice. As noted above, this court ruled there was no doubt that Paulette was the victim of aggravated murder.
 {¶ 18} Finally, Chapman maintains his appellate counsel should have argued the ineffectiveness of trial counsel, inter alia, for failing to argue speedy trial, failing to investigate the backgrounds of the witnesses and the facts of the case itself, failing to have his statement suppressed, failing to rebut expert testimony, and having a conflict of interest. As noted above, the speedy trial argument is not well founded and framing it as ineffective assistance of trial counsel would not have made any difference.
 {¶ 19} The main thrust of this argument is his trial attorneys, whom he had retained very shortly before trial, did not or could not adequately investigate the facts and the law. Chapman alleges they did not investigate any alibi witnesses or any other helpful witnesses, did not investigate Gay's criminal record, did not hire experts to rebut the state's forensic witnesses, did not bring out that he had requested an attorney before making a written statement to the state, or did not request lesser included offense instructions[2]. Chapman generally lists these arguments in conclusory fashion without adequate reference to the record. Moreover, to the extent that he attempts to be persuasive and to show prejudice, these arguments rely on matters outside the record, appellate counsel properly excluded them.[3]
 {¶ 20} Moreover, trial counsel did establish that Gay was a drug dealer and had just recently used crack cocaine, that Lehecka was drunk and could not identify the shooter, and that there were inconsistencies in the testimony of the eyewitnesses and the expert witnesses. Indeed, appellate counsel used these points as the foundation for the assignments of error. This court will not second guess those choices.
 {¶ 21} Chapman's final sub-argument is his trial counsel had a conflict of interest which prevented them from adequately representing him. He states in his supplement that he told the trial judge about this, but that the trial judge failed to make the proper inquiry. However, Chapman fails to make the necessary reference to the record to substantiate this point. The court does note that at the beginning of trial Chapman directly submitted to the judge that his counsel were not prepared. However, lack of preparation and a client's lack of confidence in his lawyers are not the same as having a conflict of interest. Thus, appellate counsel properly refrained from arguing a conflict of interest.
 {¶ 22} Accordingly, this court denies the application to reopen.
ANNE L. KILBANE, J., and COLLEEN CONWAY COONEY, J., CONCUR.
[1] Paulette and Lehecka drove to Miles and East 116 Street to buy drugs; Lehecka was in the front passenger seat. Once there, Gay approached the car to see what they wanted and then to see if he could find someone who could sell them the drugs. In acting as a broker, Gay supported his own habit. Gay testified that he went to Chapman, who did not have drugs to sell but said he wanted to rob the men in the car. Gay testified that as he walked away, he looked back and saw Chapman at the car; then he heard a gun shot and saw Chapman run away. Lehecka testified that after Gay left the car, another man came up, shot Paulette, took the money in Paulette's hand and ran away. Shortly thereafter, as Lehecka was moving his friend to the passenger seat, a man came up and offered help. Lehecka could not identify either of the men, and his testimony at one time indicated that he thought that they might be the same man.
[2] The court notes that this last point is not well founded, because trial counsel did request an instruction for involuntary manslaughter.
[3] For these arguments to be persuasive, it is necessary to show that Gay had a more extensive criminal record than what was shown during trial, that there were other witnesses, that Chapman actually had an alibi (difficult to do as he admitted to being at Miles and East 116th), and that experts would have testified differently to Chapman's benefit. Absent such evidence, these arguments are pure speculation.